J-A10042-21

**.NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| TYREE HENRY | : | |
| | : | |
| Appellant | : | No. 356 EDA 2020 |

Appeal from the Judgment of Sentence Entered January 16, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No: CP-51-CR-0005155-2018

BEFORE:   PANELLA, P.J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED AUGUST 20, 2021**

Appellant, Tyree Henry, appeals from the aggregate judgment of sentence of 30 to 60 years' confinement followed by five years' probation, which was imposed after his conviction at a jury trial for Rape, Involuntary Deviate Sexual Intercourse (IDSI), Aggravated Indecent Assault, Unlawful Contact with a Minor, Corruption of Minors, Rape of a Child, IDSI with a Child, Aggravated Indecent Assault of a person under 13 years old, Endangering the Welfare of a Child (EWOC), and Indecent Assault of a person under 13 years old.[1]  We affirm.

The facts underlying this appeal are as follows:

Sometime in 2014, when the Complainant, A.C., was 11 years old, the Defendant, who was the complainant's mother's paramour,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3121(a)(1), 3123(a)(1), 3125(a)(2), 6318(a)(1), 6301(a)(1)(ii), 3121(c), 3123(b), 3125(a)(7), 4304(a)(1), and 3126(a)(7), respectively.

began leaving his laptop in A.C.'s room. On multiple occasions, the Defendant set his laptop to secretly record A.C. once she returned to her room after bathing, while wearing only a towel. The laptop filmed A.C. drying off, putting lotion on, and changing her clothes. At a later date, while A.C.'s mother, [J.T.], was at work, the Defendant called A.C. into the bedroom he shared with A.C.'s mother. Defendant showed A.C. a video recording of her completing her post-bathing routine and told A.C. they were going to "jerk off" with each other.

Defendant instructed A.C. to remove her clothing, get Vaseline from the dresser, put the Vaseline on her fingers, and insert her fingers in and out of her vagina. While A.C. followed Defendant's commands, Defendant removed his clothing, lay flat on his back on the bed next to A.C., twisted his body to face A.C., and moved his hand up and down his penis. The incident ended after Defendant ejaculated in his hand. A.C. did not tell her mother what Defendant had instructed her to do after this incident because she was fearful that her mother would not believe her. A.C. was also concerned about how it would sound because she did not understand what she had been instructed to do.

On various occasions when A.C. was between the ages of 11 to 13 years old, Defendant forced A.C. to perform oral sex on Defendant in various places in the home, including his bedroom, the dining room, living room, kitchen, and A.C.'s bedroom. After Defendant would ejaculate in A.C.'s mouth, he would instruct A.C. to open her mouth and move her tongue around with the ejaculate so that he could see it. On three occasions, during oral sex, Defendant would push his penis to the very back of A.C.'s throat which caused A.C. to gag and throw up. Defendant called this "ghetto gagging." On numerous occasions Defendant would order A.C. to lay on top of him with her mouth on his penis and Defendant's mouth on her vagina in order to perform oral sex on one another simultaneously. There were also multiple occasions where Defendant would solely perform oral sex on A.C.

Defendant continued to instruct A.C. to masturbate in front of him on multiple occasions in various rooms of their home. Defendant forced A.C. to use her mother's black dildo and pink anal beads on multiple occasions when masturbating in Defendant's room. On several occasions, Defendant would give A.C. his laptop and instruct her to record herself masturbating in her bedroom for him, sometimes telling A.C. to use a magic marker in these recordings.

On other occasions, Defendant inserted his penis into A.C.'s vagina in his bedroom, A.C.'s bedroom, the kitchen, and the dining room. On one occasion, while A.C. was using the anal beads, Defendant removed the anal beads and instructed A.C. to put Vaseline on his penis and then proceeded to insert the tip of his penis into A.C.'s buttocks. On a separate occasion, Defendant called A.C. into his bedroom while he was lying on his stomach, naked, on his bed. Defendant then told A.C. to lick his buttocks.

On one occasion, Defendant gave A.C. a plastic Tupperware container while A.C. was in the bathroom and directed A.C. to defecate into the container. After defecating in the container, A.C. entered Defendant's bedroom with the container. While lying on the floor, Defendant instructed A.C. to get a plastic spoon and feed him the feces. A.C. did what she was told.

When A.C. was 13 years old, Defendant told A.C. to bring a pair of stockings to him in his bedroom. Defendant then cut out eyeholes and a mouth hole on the stockings and placed the stocking on A.C.'s head. Defendant stood, naked, and demanded A.C. to get on her knees, with the stocking over her head, and perform oral sex on him while he recorded it with his LG phone. Sometime after this incident, when A.C. was 13 years old, Defendant called A.C. into his bedroom and told A.C. that if he ever touched her again, to tell someone. After this conversation Defendant stopped touching A.C., but continued to ask her to record herself masturbating for him and continued to kiss her on the lips. Defendant told A.C. he had started touching her because he was bored and wanted A.C. to trust him more and come to him if she had any issues about anything.

One evening, when A.C. was 14 years old, Defendant called her into his bedroom after overhearing A.C. talking on the phone to a friend while in the bathtub. Based on their subsequent conversation, the Defendant concluded that A.C. had a sexual interest in other girls. A.C. denied any sexual interest in girls, to which the Defendant responded by calling A.C. a liar and slapping A.C. in the face with his hand.

The following morning, Defendant took A.C.'s phone as punishment for talking to girls. A.C. attended school without her phone and after school went to a program that she regularly attended, the Youth Outreach Adolescent Community Awareness Program ("YOACAP"). When A.C. arrived to YOACP, she spoke to Ebony Joyner, the YOACAP Unit Leader, and disclosed to Ms.

Joyner the sexual abuse she had experienced at the hands of the Defendant. A.C. testified that she spoke with Ms. Joyner because she really didn't know anyone at school to whom she could disclose the abuse.

After YOACAP ended for the day, Ms. Joyner drove A.C. home and told A.C. she would help her disclose the abuse to A.C.'s mother. That same evening, A.C. wrote down the sexual abuse she had endured on an index card for her mother. After the Defendant left for work that evening, A.C.'s mother entered A.C.'s room and A.C. handed her the index card she had written on. The index card contained 3 lines; (1) "Ty sexual/smoking/hitting, 11-14, November?" (2) "Boys/sexual/nudes;" and (3) "Cutting." A.C. explained to her mother what these notes on the index card meant: line 1 was about the Defendant's sexual abuse of A.C., Defendant smoking marijuana with A.C., and the time period in which it occurred; line 2 was about A.C. admitting she had had sex with another boy aside from the Defendant; and line 3 was about A.C. cutting herself because it felt better than what had been going on with the Defendant.

Trial Court Opinion (TCO) at 2-6 (citations to notes of testimony omitted).

Appellant was arrested and charged with Rape and related charges based on sexual abuse allegations made by A.C. On June 10, 2019, Appellant proceeded to a jury trial.

At the opening of trial, the defense moved for sequestration of the witnesses. The Commonwealth asked for the same and the trial court ordered sequestration of all witnesses. The Commonwealth called the Complainant as a witness on the first day of trial, June 11, 2019[.]

*Id*. at 2-6 (citations to notes of testimony omitted). A.C. testified at length about the sexual abuse she endured by Appellant between the ages of 11 and 13. N.T., 6/11/19, at 40-95. A.C. was 15 years old at the time of trial. *Id*. at 18.

On the second day of trial, June 12, 2019, the Commonwealth called an expert witness and two additional witnesses, including J.T, A.C.'s mother. J.T. testified that A.C. disclosed the abuse to her on March 13, 2018. N.T., 6/12/19, at 113-137. J.T. testified that she called Appellant immediately and Appellant stated "I didn't touch her. I made her use a – a dildo. She was already fucking. She's a hoe." *Id*. at 122. J.T. testified, "[Appellant] was like, I knew I shouldn't have touched her. And I said you hit her, you hit her? Like, you hit [A.C.]?" *Id*. at 125.

> On direct examination . . . [J.T. also] . . . gave testimony which indicated that she had violated the Court's sequestration order. She testified that she had overheard portions of A.C.'s testimony while in the anteroom outside of the courtroom, and later questioned A.C. about the testimony she had overheard. She also indicated she had spoken to Ms. Joyner. [J.T.] admitted that she had not known the specifics of the Complainant's sexual abuse until she had questioned the Complainant the previous day, after the Complainant's testimony. After [J.T.]'s admission to violating the sequestration order, the Defendant moved for a mistrial.

TCO at 2-6 (citations to notes of testimony omitted). The trial court denied Appellant's motion for a mistrial and permitted Appellant to cross-examine J.T. regarding the violation of the sequestration order. N.T., 6/12/19, at 148-162. The trial court instructed the jury about J.T.'s violation of the sequestration order. N.T., 6/13/19, at 144-145.

The jury found Appellant guilty of the above-mentioned charges. On December 16, 2019, the trial court sentenced Appellant to an aggregate sentence of 30-60 years' incarceration plus five years' probation. Order, 12/16/19. Appellant filed a post-sentence motion challenging the weight of the verdict and the discretionary aspects of his sentence. Post-Sentence Motion, 12/26/19. The trial court denied Appellant's post-sentence motion.

Order, 1/16/20.  The trial court filed an amended judgment of sentence order on 1/16/20.  Order, 1/16/20.[2]

On January 17, 2020, Appellant filed this timely direct appeal.[3] Appellant presents the following issue for our review:

> Did not the trial court abuse its discretion by denying Tyree Henry's motion for a mistrial where [J.T.], the mother of the child-complainant, A.C., knowingly violated the court's sequestration order in a case hinging on A.C.'s credibility by listening to A.C.'s testimony and discussing the allegations, the subject of A.C.'s testimony, with A.C. and the prompt complaint witness before [J.T.] testified; and where [J.T.] used the information she learned through the violation to repeatedly bolster A.C.'s credibility during her testimony; and where the court's chosen remedy deprived Mr. Henry of his state and federal constitutional rights to meaningful cross-examination, present a defense, and to a fair trial?

Appellant's Brief at 3.

"[S]equestration is (next to cross-examination) one of the greatest engines that the skill of man has ever invented for the detection of liars in a court of justice."  *Commonwealth v. Turner*, 88 A.2d 915, 920 (Pa. 1952) (*quoting* Wigmore on Evidence, 3rd Edition, Vol. VI, § 1838, p. 354).  "[T]he remedy selected where violation of a sequestration order occurs is within the

---

[2] The appeal correctly lies from the amended judgment of sentence order dated January 16, 2020, which clarified the consecutive and concurrent nature of the charges, but did not change the sentence.  We have amended the caption accordingly.

[3] Both the trial court and Appellant complied with Pa.R.A.P. 1925.  Appellant filed a timely Rule 1925(b) statement of errors complained of on appeal on June 30, 2020.

sound discretion of the trial court." ***Commonwealth v. Rose***, 172 A.3d 1121,

1127 (Pa. Super. 2017) (citation omitted).

> In exercising its discretion, the trial court should consider the seriousness of the violation, its impact on the testimony of the witness, and its probable impact on the outcome of the trial. We will disturb the trial court's exercise of its discretion only if there is no reasonable ground for the action taken.
>
> Additionally, the trial court should consider whether ... the party calling the witness procured his disobedience. Further, [a] mistrial may be granted only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict.

***Id***. (citations and quotation marks omitted) (brackets in original).

Appellant argues that the trial court's remedy deprived him of his right to meaningful cross-examination, to present a defense, and to a fair trial. Appellant's Brief at 3. There is no dispute that [J.T.] violated the trial court's sequestration order. After Appellant raised a motion for a mistrial, based on J.T.'s violation of the sequestration order, the trial court heard arguments from both the prosecutor and defense attorney. The trial court stated, the violation was "not prosecutorial misconduct." N.T., 6/12/19, at 152.

Appellant's counsel argued,

> I do think it is [J.T.]'s misconduct by trying to elicit information from her daughter. Not—not necessarily for the purposes of coming in court and crafting her testimony, but just because she's interested and wants to know what's going on, and wants to know what her daughter said. If a mistrial were granted, I can prepare to question [A.C.] about that circumstance and the – the potential she spoke

with her mother during the trial, and what was said, and what her mom asked her. And then, obviously, after that, [J.T.] would potentially take the stand, and then be subject to cross-examination on those issues. I - - I think that is an important line of questioning.

*Id*. at 152-53.

The trial court asked for a full read back of [J.T.]'s testimony pertaining to the violation of the sequestration order. *Id*. at 157. The trial court concluded,

[t]he bigger issue is [J.T.] herself and, perhaps, now all of those things she's learned since the time I ordered the sequestration from her daughter. Not necessarily about what she said, specifically, but about these acts and how that may or may not have influenced her testimony. I think that is ripe for cross-examination.

I do think that an instruction should be given to the jury that they can consider, perhaps, that there is some taint related to that, the breaking of the sequestration order, but, I am denying your motion for a mistrial at this time.

*Id*. at 161-162.

The trial court gave the following jury instruction,

You have heard evidence that [J.T.] while sequestered or separated overheard parts of the trial and spoke to A.C. during our breaks. You may, if you choose, consider this evidence to help you judge the credibility and weight of any testimony given by [J.T.]. You also may, if you choose, regard this evidence that [J.T.]'s testimony was influenced by what she may have heard, but you are not required to do so.

If you conclude that one of the witnesses testified falsely and did so intentionally about any fact that is necessary to your decision in this case, then for that reason alone you may, if you wish, disregard everything that witness has said.

N.T. 6/13/19 at 144-45.

The trial court, in its Rule 1925(a) opinion, stated

[while J.T.'s] violation of the sequestration order may have tainted her testimony . . . the Commonwealth did not procure [J.T.]'s violation of the sequestration order, had made reasonable efforts to ensure none of its witnesses violated the order, and it was unaware of [J.T.]'s violation. Further, after denying Defendant's motion for a mistrial, the trial court allowed the Defendant to cross-examine [J.T.] about her violation of the sequestration order and any possible effect it may have had on her testimony and added a curative jury instruction regarding [J.T.]'s testimony. . . .

The trial court denied the Defendant's motion for a mistrial as it reasoned that if there had been some taint, the taint would still remain even during a new trial because the same information that had been overheard by [J.T.] would still be known to her at a second trial. Thus, the trial court believed that the better course of action was to make the jury aware of the violation and its possible impact on [J.T.]'s testimony and to give a curative instruction that would erase the possibility of taint. The trial court concluded that after its instruction, the jury would take the violation of the sequestration order into account during its deliberations when weighing and assessing [J.T.]'s testimony.

TCO at 7-8.

There are reasonable grounds for the trial court's chosen remedy, to permit Appellant to cross-examine J.T. about the sequestration violation and to give the jury an instruction about her violation of the sequestration order. *Rose*, 72 A.3d at 1127-28. The trial court considered the violation a serious one, and considered the impact on the testimony of J.T. and its probable outcome of the trial. Additionally, the trial court determined that the party calling the witness, the Commonwealth, did not procure her disobedience. The

Commonwealth also agreed not to further question J.T. about A.C.'s initial disclosure of the abuse to J.T. on March 13, 2018, to prevent any taint of J.T.'s testimony in light of her violation of the sequestration order.  N.T., 6/12/19, at 154.

The jury was not prevented from weighing and rendering a true verdict. ***Rose***, 172 A.3d at 1127.  The jury heard the extensive testimony from A.C. regarding the sexual abuse she experienced from Appellant.  The jury heard testimony from Ms. Joyner regarding A.C.'s disclosure of the abuse, and J.T.'s testimony regarding A.C.'s initial disclosure of the abuse.  J.T. also testified that she called Appellant at the time A.C. disclosed the abuse and Appellant stated "I made her use a – a dildo."  N.T., 6/12/19, at 122.  The jury was advised of J.T.'s violation of the sequestration order and apprised of the possible impact on J.T.'s testimony through a jury instruction.

Based on the foregoing, Appellant is not entitled to relief.  The trial court did not abuse its discretion in denying Appellant's motion for a mistrial and the trial court had reasonable grounds for its determination of the appropriate remedy for J.T.'s violation of the sequestration order.

Appellant argues that the trial court abused its discretion in denying his motion for a mistrial because J.T. used the information she learned through the violation of the sequestration order to repeatedly bolster A.C.'s credibility, which affected the outcome of his trial because the entire case rested on A.C.'s credibility.  Appellant's Brief at 3.  J.T. testified, on direct examination:

> [J.T.]: Like, I'm hearing all this stuff and I'm like, you know what, **you got to be telling me some** truth because I know

what I experienced with Ty. So I'm just saying that. I would never tell her my sex life. And the things she was going through and doing.

N.T., 6/12/19, at 144 (emphasis added). J.T. also stated, "[a]nd as a mom, I'm just like **he was doing all that stuff—all this stuff to you that I experienced**, you know?" ***Id***. at 147 (emphasis added).

Appellant relies on ***Commonwealth v. Laughman***, 452 A.2d 548 (Pa. Super. 1982) to support his arguments that the trial court should have granted his motion for a mistrial and the jury instruction given was insufficient. Appellant argues that he was prejudiced in the same way as Laughman, because J.T.'s testimony improperly bolstered A.C.'s credibility, in a case hinging on credibility. Appellant's Brief at 32. Laughman was on trial for aggravated assault and the witness testified to a prior instance where appellant was found guilty of aggravated assault. ***Id.*** Laughman specifically made a motion for a mistrial based on that testimony of the witness. This Court concluded, "although the Commonwealth did not pursue this line of inquiry, the single instance unnecessarily conveyed to the jury the *express* fact of a *prior criminal offense* and thus mandated a mistrial." ***Id***. at 550 (internal citation omitted) (emphasis added). Finally, this Court stated, "[t]he prejudice aroused by such a *specific reference* to appellant's *prior unrelated criminal activity* precluded the effectiveness of any curative instructions." ***Id***. (emphasis added).

To the extent Appellant argues the trial court erred in not granting his motion for a mistrial based on prejudice to Appellant by J.T. improperly

- 11 -

bolstering A.C.'s credibility, the trial court did not discuss this specific argument because Appellant did not raise this with the trial court. Appellant is raising this argument for the first time on appeal.[4] Nevertheless, Appellant's reliance on **Laughman** is without merit and unsupported by case law. The **Laughman** holding does not extend to testimony by a witness of a potential prior consistent statement; rather, the holding is based exclusively on the "express fact" the witness testified to "a prior criminal offense" and "specific reference to appellant's prior unrelated criminal activity." *See **Id**.* at 550. J.T. did not testify to "a prior criminal offense" and **Laughman** is precise in its holding. **Id**. at 550.[5] The trial court properly considered Appellant's motion for a mistrial, did not abuse its discretion in denying the motion, and the trial court had reasonable grounds for its determination of the appropriate remedy for J.T.'s violation of the sequestration order, as discussed above.

Judgment of sentence affirmed. Jurisdiction relinquished.

---

[4] "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Likewise, Appellant did not preserve this issue in his Rule 1925(b) statement. "Any issues not raised in a 1925(b) statement will be deemed waived." **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998).

[5] To the extent Appellant argued to the trial court that J.T. did testify to "specific reference[s] to Appellant's prior unrelated criminal activity," when she testified about sexual acts that occurred between her and Appellant, this is an entirely separate issue for relief that was not preserved for appeal in Appellant's Rule 1925(b) statement, Statement of Questions presented, nor Appellant's Brief. *See **Lord**,* 719 A.2d at 309.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/20/2021